UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT ASHLAND
CIVIL CASE NO. 0:23-CV-00075-EBA

JOHN DOE                                                    PLAINTIFF

VS.

TODD BOYCE, ET AL.                                          DEFENDANTS

## RESPONSE TO SUA SPONTE ORDER ENTERED ON MAY 22, 2026

For his response to the sua sponte order entered on May 22, 2026, Joseph Morgan states as follows:

### FACTS

Todd Boyce was the chaplain while Mr. Morgan was an inmate at Eastern Kentucky Correctional Complex. Mr. Boyce was indicted by a Morgan County Grand Jury on September 29, 2022 on the following charges: sodomy (third degree) and sexual abuse (second degree). He ultimately pled guilty to a single count of official misconduct (first degree) on July 15, 2024. A copy of the courtnet printout is attached as Exhibit A. The victim in the case was Joseph Morgan (John Doe).

Mr. Morgan filed his complaint on June 23, 2023 [DN 1, Page ID 1-12]. In it, he alleged violations of 42 U.S.C. Section 1983, assault and battery, sodomy (violation of KRS 510.090), sexual abuse (violation of KRS 510.120), negligence, emotional distress, and negligent supervision. As mentioned previously, Mr. Boyce pled guilty to criminal conduct in Commonwealth of Kentucky v. Boyce, Morgan Circuit Court, Indictment No. 22-CR-00086.

### SUMMARY OF THE ARGUMENT

There are several reasons why Joseph Morgan's claims against Todd Boyce n

his official capacity should not be dismissed.   First, he pled guilty to a crime related to the incident involving Joseph Morgan:  official misconduct.   Second, Mr. Boyce violated Mr. Morgan's rights under 42 U.S.C. Section 1983.  These issues will be addressed in greater detail below.

## ARGUMENT

Joseph Morgan's claim against Todd Boyce should not be dismissed because he pled guilty to official misconduct—a violation of KRS 522.020.  It states:

> (1) A public servant is guilty of official misconduct in the first degree when, with intent to obtain or confer a benefit or to injure another person or to deprive another person of a benefit, he knowingly:
>
> (a) Commits an act relating to his office which constitutes an unauthorized exercise of his official functions; or
>
> (b) Refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or
>
> (c) Violates any statute or lawfully adopted rule or regulation relating to his office.
>
> (2) Official misconduct in the first degree is a Class A misdemeanor.

Based on the above authority, Mr. Boyce acknowledged there was enough information to convict him of:  committing 'an act relating to his office which constitutes an unauthorized exercise of his official function;' or violating 'any statute or unlawfully adopted rule or regulation relating to his office.'  In other words, Mr. Boyce conceded that he engaged in inappropriate conduct in his role as prison chaplain.  Mr. Boyce pled guilty to official misconduct in Morgan Circuit Court on July 15, 2024.  That alone should be enough to establish that he violated Joseph Morgan's constitutional rights in accordance with 42 U.S.C. 1983.

Todd Boyce is not entitled to qualified immunity. In *Yanero v. Davis*, 65 S.W.d 510, 522 (Ky. 2001), the Kentucky Supreme Court stated:

> Under Kentucky law, [q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment ...; (2) in good faith; and (3) within the scope of the employee's authority.

"However government employees are not afforded qualified immunity for any ministerial act or any discretionary act performed in bad faith," *Wales v. Pullen*, 390 S.W.3d 160, 166 (Ky. Ct. App. 2012). A duty is ministerial:

> . . . when it is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts; that a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in its nature, *Gaither v. Justice & Public Safety Cabinet*, 447 S.W.3d 628, 633-634 (Ky. 2014).

The court continued:

> However, an act is not necessarily taken out of the class styled 'ministerial' because the officer performing it is vested with a discretion respecting the means or method to be employed. *Id.*

In other words, Todd Boyce is not entitled to qualified immunity for violation of his ministerial duties or discretionary acts performed in bad faith. There are several sources that describe his ministerial duties. CPP 3.1 states, in part:

> A.  General Standards of Conduct
>
> 1.  Each employee shall adhere to the requirements of KRS 11A.020. To meet the ethical standards prescribed by this policy, an employee shall adhere to KRS 11A.005 though 11A.045 and the standards of conduct set forth.
>
> 3.  Use of time, facilities, equipment or supplies of the commonwealth by an employee for his private purposes shall constitute a violation of the standards of ethical conduct set forth in this policy and may result in

appropriate disciplinary action as prescribed by the appointing authority for an employee, or any other appropriate action involving reimbursement of costs or restriction from Department of Corrections institutions or offices.

B. Conflicts of Interest

3. The following activities relate specifically to relationships with an offender and shall be prohibited:

a. Accepting a gift or favor from an offender, family of an offender, or his agent.

b. Providing a gift or favor to an offender, family of an offender, or agent except as authorized in the official performance of duties.

c. Buying from or selling a service or item to an offender, family of an offender, or agent or engaging in personal business transactions that would provide a benefit not available to the general public. An employee may purchase a product made by an inmate through established procedures including Correctional Industries or institutional programs.

d. Developing a relationship between staff and an offender other than that necessary in the normal conduct of business. An employee shall not become romantically involved with an offender, engage in sexual relations with an offender, or develop a sexual relationship with a member of an offender's immediate family.

e. Taking or sending, either to or from, an inmate any verbal or written message, from or to a third person; or any literature, reading matter, item, article or substance, except as necessary in carrying out the employee's assigned duties.

CPP 3.22 states, in part:

"Sexual abuse" means:

A.  The behavior described by KRS 510.120(1)(c); or

B. Sexual abuse of an inmate, detainee or resident by a staff member, contractor or volunteer as established in 28 C.F.R. § 115.6.
Sexual abuse of an inmate, detainee or resident by a staff member, contractor or volunteer includes any of the following acts, with or without consent of the inmate, detainee or resident:

2. Contact between the mouth and the penis, vulva or anus;

3. Contact between the mouth and any body part where the staff member, contractor or volunteer has the intent to abuse, arouse or gratify sexual desire;

5. Any other intentional contact, either directly or through the clothing of or with the genitalia, anus, groin, breast, inner thigh or the buttocks that is unrelated official duties or where the staff member, contractor or volunteer has the intent to abuse, arouse or gratify sexual desire;

6. Any attempt, threat or request by a staff member, contractor or volunteer to engage in the activities described in paragraphs (1) through (5) of this definition;

"Sexual contact" means any touching or physical contact of the sexual or other intimate parts of a person, including but not limited to the genitalia, anus, groin, breasts, inner thighs, or buttocks, either directly or through clothing, that is unrelated to official duties, or done for the purpose of arousing, humiliating, harassing, degrading, or gratifying the sexual desire of any person.

"Sexual offense" means any behavior or act of a sexual nature directed toward an offender by a staff member. This includes completed, attempted, threatened, or requested acts including sexual assault, sexual contact, sexual harassment, voyeurism, conduct of a sexual nature or implication, obscenity and unreasonable invasion of privacy. Sexual offense also includes conversations or correspondence, which suggest a romantic or sexual relationship between an offender and a staff member.

"Staff member" for purposes of this policy only, means full-time, part-time, and interim employees, interns, students, volunteers, consultants, and contractors doing business with the Department of Corrections.

"Unauthorized behavior" means any activity or contact with an offender or offender's family that is unrelated or unnecessary to the staff member's assigned duties or official Department business.

II. POLICY and PROCEDURE

This policy shall apply to all full time, part-time, and interim employees, interns, students, volunteers, consultants, and contractors doing business with the Department of Corrections. The Department of Corrections has a zero tolerance policy toward sexual offenses. Corrections' employees shall avoid offensive or inappropriate conduct at work and sexual offenses. Complaints of sexual offenses shall be investigated in a prompt,

effective and uniform manner.

A.  PROHIBITED BEHAVIOR

A staff member shall be prohibited from:

1.  Any acts defined as sexual abuse in this policy.

2. Any acts defined as sexual contact in this policy.

3. Any acts defined as sexual harassment in this policy.

4. Any acts defined as a sexual offense in this policy.

5. Any acts defined as unauthorized behavior in this policy.

6. Sexual advances in any form towards an offender.

7. Sexually offensive language, comments or gestures.

8. Influencing, promising or threatening an offender's safety, custody, privacy, housing, privileges, work or program status, in exchange for personal gain or favor of a sexual nature.

9. Creating or encouraging an atmosphere of intimidation, hostility, or offensiveness as perceived by any individual who observes the sexually offensive behavior or language.

10. The act or attempted act of observing or interfering with an offender's personal affairs without a reasonable need to do so for the immediate safety and security of the offender, staff member, or others within the institution or office environment, i.e., failing to properly announce his presence when entering a housing unit, reading personal mail or written materials of an offender when not required for the safety and security of the environment.

11. Any activity or contact with an offender or offender's family that is unrelated or unnecessary to the staff member's assigned duties or official Department business.

Copies of the above provisions are attached as Exhibit B and C.  Capt. Elam concluded

that Mr. Morgan violated the above provisions in his memorandum to Warden Green:

> I Captain Elam during my investigation into Chaplain Boyce having
> Inmates do sexual favors for him if substantiated by the Inmates

statements and the Avigilon Camera System. Chaplain Boyce had told inmate Morgan to cut a slit in his pants and not wear any underwear so he would have easy access (The slit was verified off the camera system and a photo was taken). Inmate Morgan stated that Chaplain Boyce first wanted him to get hard so he could see it. On another occasion he pulled his penis out and Chaplain Boyce gave him oral sex in the office until he blew his load on his hand and the Chaplain licked it off. Inmate Morgan stated on Chaplain Boyce told him he would save that for later.

The report continued:

Inmate Morgan stated that some of the favors that Chaplain Boyce did for him was call his dad several times, let him call attorneys when he needed to. Inmate Morgan had stated that he had given Chaplain Boyce passwords so he could get on and look at his Facebook Pictures and it was verified that someone here at the institution had gotten on Inmate Morgan's Facebook account from an IP address 205.204.187.128 and after talking with IT Greg Nickell this is a KY IT IP address but not one from the Institution it is more like someone on a personal computer using a VPN account. There are Facebook photos that Chaplain Boyce has downloaded to his desktop on a state computer, there are downloads of naked men that he was downloaded to his computer desktop.

A copy of the memorandum is attached as Exhibit D. Ultimately, Todd Boyce's

employment with the Department of Corrections was terminated as a result of the above

investigation. In a letter dated July 28, 2022, Warden James Green mailed the following

letter to Todd Boyce. It states, in part:

Specifically, on several different occasions, You, Chaplain Todd Boyce had inmate Joseph Morgan #296429 in your office with the door shut. You, Chaplain Boyce had told inmate Morgan to cut a slit in his pants and not to wear underwear so he would have easy access to his penis. The slit was verified using the Avigilon Camera System. Inmate Morgan stated that Chaplain Boyce first wanted to see it hard (penis). On another occasion Chaplain Boyce performed oral sex on inmate Morgan until he blew his load on his hand and you, Chaplain Boyce, licked it off. Inmate stated that on another occasion Chaplain Boyce told him to please himself until he blew his load into a baggie and Chaplain Boyce told him he would save it for later. Inmate Morgan stated that Chaplain Boyce also knew his log in information for Google and Facebook and after accessing his Facebook seen that it was logged into on May 14, 2022 with the IP address 205.204.187.128 and this address was verified as being one that is

belonged to Commonwealth of Kentucky, also on that day Chaplain Boyce worked.

A copy of the letter is attached as Exhibit E. Todd Boyce requested a pre-termination hearing. A copy of it is attached as Exhibit F. Mr. Boyce failed to attend the hearing. In a letter dated August 8, 2022, Warden James Green sent another letter to Todd Boyce. It stated, in part:

> On July 28, 2022, you received a notice of Intent to Dismiss, which included a form to request a pre-termination hearing with me or my designee. You scheduled your Pre-Termination hearing for Monday, August 8, 2022, in which you did not show. I have determined that the clear weight of the evidence establishes that you committed the charges as outline in my letter to you dated July 28, 2022.
>
> Therefore, based on the authority of KRS 18A.095, you are hearing notified that you are officially dismissed from duty and pay effective August 09, 2022.
>
> You are being dismissed from your position of Chaplain with the Department of Corrections, Eastern Kentucky Correctional Complex for violation of 101 KAR 1:345 and 101 KAR KAR 2:095, as stated for the specific reasons outline in my letter to you dated July 28, 2022. . .

A copy of the letter dated August 8, 2022 is attached as Exhibit G. It is readily apparent from a review of the above memorandum and letters termination Todd Boyce's employment that he violated his ministerial duties and is not entitled to qualified immunity.

Beyond the state authority outlined above, the Prison Rape Elimination Act (PREA) of 2003 outlines the parameters of Todd Boyce's ministerial duties. It states, in part:

> Sexual violence, against any victim, is an assault on human dignity and an affront to American values. The Prison Rape Elimination Act of 2003 (PREA) was enacted with bipartisan support and established a "zero-

tolerance standard" for rape in prisons in the United States. 42 U.S.C. 15602(1) [now 34 U.S.C. 30301(1)].

PREA mandates a zero tolerance standard. As outlined in the memorandum and letters from Warden Green, Todd Boyce's behavior was clearly inappropriate and constituted a violation of his ministerial duties.

Wherefore, Joseph Morgan request that the court conclude that Todd Boyce is not entitled to qualified immunity.

Respectfully submitted,

MARCUM TENNYSON, PLLC

/s/Scott Marcum
S. Scott Marcum
P.O. Box 9551
Paducah, Kentucky 42002
Tel:    (270)534-5135
Fax:    (270)477-0041
smarcum@marcumtennyson.com

ATTORNEY FOR PLAINTIFF
JOHN DOE

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of May 2026, I electronically filed the foregoing document with the clerk of court, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Hon. Eldred Edward Adams , Jr
Adams & Adams
P.O. Box 606
Louisa, KY 41230
Email: bud@eeadams.com

/s/ S. Scott Marcum
S. Scott Marcum